Pietro Mancini, et als.
vs.
United States Fire Insurance Company of New York } No. 11465.

Pietro Mancini, et als.
vs.
Yorkshire Insurance Co., Lt'd., of York, England } No. 11464.

November 25, 1932.

CHURCHILL, J. Heard on bills, answers and proofs.

These two cases were heard together on substantially identical facts. They were brought to reform policies of fire insurance issued by the respective companies to the complainants. The cases were heard by agreement of the parties on one of the defences only raised by the answers and pleas, namely: whether or not the bills could be sustained on the ground of mutual mistake, other defences being reserved.

The insured property was an ice-house which stood on leased land but the policies as issued contained the usual provision that "if the subject of insurance be a building on ground not owned by the assured in fee simple," the policy should be void.

The following facts are undisputed:

On October 27, 1925, Mary F. Whipple leased to Frederick J. Walch and Charles L. Walch a tract of land in North Providence for a term ending November 1, 1936. On October 31, 1925, Frederick J. and Charles L. Walch assigned to and Loreto Silvestro and Luigi Cioci took the lease for its whole term. The lease itself was not put in evidence but from recitals in the instrument of assignment it appears that the lessors had the right to build one or more ice-houses on the premises. The exact date when this ice-house was built does not appear but it was at a time previous to the beginning of the negotiations with the agent of the respondent companies. On December 15, 1926, Loreto Silvestro, Luigi Cioci and Pietro Mancini entered into a partnership to carry on a general ice business and the partnership articles contained a clause whereby Silvestro and Cioci assigned to Mancini a one-third interest in the lease which they held by the assignment of October 31, 1925.

Anthony Olivo was appointed an agent of the respective companies for the transaction of their insurance business in Rhode Island. One of the policies involved in the case was issued on March 3, 1931, and the other on February 27, 1931. Previous to this time the partnership, acting through Mancini, had been in treaty with Olivo for insurance on the ice-house and Olivo on behalf of the two companies involved had agreed to insure the ice-house for the interest of the partners and they had agreed to take such insurance and pay the premiums stated by Olivo for the risk and did, in fact, pay the premiums.

When the policies were in force, on October 25, 1931, the building and equipment covered by the policies were destroyed by fire. When proof of loss was filed by the assured, the insurers disclaimed liability on the ground that the policies were void because the building was on ground not owned by the assured in fee simple.

The testimony relating the alleged mistake is in dispute. All the negotiations leading up to placing the risk in the companies were between Olivo and Mancini. Mancini testified that he told Olivo that the building stood on leased land and that Olivo assured him

that the policies were good. Mancini admitted that Olivo asked him if anyone else (other than the partners) was interested in the property and that he (Mancini) answered in the negative.

Mancini further testified that after the loss occurred, Olivo, on several occasions when discussing the refusal of the companies to pay the loss, said he knew at the time the policies were issued that the building stood on leased land but did not know that that made any difference and that he did not know the companies would not insure such property.

The other two partners testified to like statements on the part of Olivo. Further than that, two other witnesses not interested in the partnership testified to statements made by Olivo showing his knowledge that the building stood on leased land prior to the time the policies were issued.

Olivo testified that when he asked Mancini who owned the place (that is, the ice-house), Mancini gave him the names of the three partners. Olivo specifically denied that he was told or that he knew that the ice-house stood on leased land. He and another agent of the companies inspected the building before the policies went out. At one of the interviews with Mancini, before the policies were issued, Olivo testified that he asked Mancini if there was anyone else interested in the ice-house. Mancini then asked him what he meant. Olivo replied that he meant if there was anything like a silent partner or a mortgage or something of that sort: Was there any other person who has anything to do with the ice-house. Mancini then replied that the three partners were the only ones interested. Olivo admitted that he did not know that it made any difference whether the ice-house was on leased land or not; that he did not know that a rider on the policy was necessary, setting out the limited interest of the assured in such a case, and neither did he know the meaning

of the phrase "fee simple" as used in the policies.

The evidence, when weighed, warrants a finding by the Court and the Court so finds that it appears by the weight of the evidence that Olivo knew when, as agent of the respondent companies, he agreed to issue the policies to the complainants insuring the ice-house, that it stood on leased land and that neither he nor the three partners, in fact, knew of the condition in the statutory form of policy in respect to the ownership in fee simple of the land on which the building stood.

The Court further finds, as a fact, that the complainants were unable to read the English language and relied on Olivo to deliver to them valid policies according to his agreement and that, owing to the mutual mistake of both parties in respect to the matter of the condition in the policies relating to ownership in fee simple of the building insured, policies were issued which did not correspond to the intention and agreement of the parties in that they did not include a clause or rider eliminating such condition from the policies.

The respondents argue that the mistake is one of law and hence the situation is without remedy; that the form of policy being statutory in this state, if one or both the parties mistook the law as to what was an insurable interest, it was a pure mistake of law against which equity will not relieve.

In *Ryder* vs. *Ryder*, 19 R. I. 188, it was held that where a mistake is made in regard to the legal effect of the terms employed in reducing a contract to writing, equity will grant relief.

In the case at bar the parties agreed to insure the ice-house but by a mutual mistake of law as to the terms of the policies issued to carry out the agreement, the parties failed to eliminate a clause in the policy or to attach a rider thereto. The case seems to fall within the principle of the

Ryder case. Other high authority is to the same effect.

In *Snell* vs. *Insurance Company*, 98 U. S. 85, the agreement was to insure cotton in the interest of several partners. The policy as actually written was in the name of one partner only, on the innocent representation of the agent that a policy so written would protect the interest of all the partners. The Court held that the policy might be reformed although the mistake was one of law as to the scope of the policies actually issued.

Respondents further argue that on the authority of *Inventash* vs. *Insurance Co.*, 48 R. I. 321, the complainants having retained the policies are bound by their terms. In that case the Court held in a suit on the policy at law by the assured to recover a loss that "in legal contemplation knowledge of such terms is possessed by the insured even though he be illiterate."

The term involved here was the usual condition against incumbrances.

The situation in the Inventash case is different from the situation involved in the cases at bar. In the Inventash case the complainant affirmed the contract by suing on it. In the case at bar the complainants are not bringing suit, insofar as the present question is involved, on the policies, but are bringing suit under a prior agreement to issue policies of insurance. They seek to have the policies reformed to correspond with the agreement to insure.

In this aspect the case falls within the reasoning of the decision in *Peck* vs. *Kirby*, 39 R. I. 343 at 353 et seq., where the Court held that retention of a lease for ten years by the complainant was not sufficient to bar relief by reformation.

Further, in the case at bar the complainants did not read the English language; there is no evidence that their attention had ever been called to the condition in the policy respecting ownership prior to the loss and they clearly relied on the agent Olivo to furnish them with valid policies. Under such circumstances the complainants are not bound by the fact that they retained the policies and the Court finds that they were not negligent in not sooner obtaining knowledge that the policies in point of fact did not correspond with the agreement made with Olivo.

On the whole case the complainants have made out a case of mutual mistake sufficient to warrant reformation of the policies as prayed.

Other questions involved on the pleas and answers are reserved for further hearing.

For complainants: Philip S. Knauer, Luigi DePasquale.

For respondents: William A. Gunning.